E-FILED
Tuesday, 03 November, 2026 03:28:59 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **EDWARD ROBERSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-1015** |
| | ) | |
| **LATOYA HUGHES *et al.*,** | ) | |
| **Defendants.** | ) | |

**ORDER**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Complaint (Doc. 1) filed under 42 U.S.C. § 1983 by Plaintiff Edward Roberson, an inmate at Menard Correctional Center.

## I. Screening Standard

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing a complaint, the court accepts the factual allegations as true and construes them liberally in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

## II. Facts Alleged

Plaintiff's Complaint (Doc. 1) alleges constitutional deprivations at Pontiac Correctional Center ("PCC") and Hill Correctional Center ("HCC") against seventeen individuals, four of whom are unidentified.

On October 2, 2023, Plaintiff was an inmate at PCC when he observed Defendant Jeffrey A. Gabor, who was passing out food trays, removing items from one tray and placing them on another tray. Gabor delivered to Plaintiff the food tray from which Plaintiff observed him removing items. The tray had two pieces of bread and cereal. When Plaintiff told Gabor that something was missing, Gabor ignored Plaintiff. When Gabor delivered the food tray to the inmate in the neighboring cell, that inmate told Gabor that "the peanut butters were missing." (*Id*. at 7.) Gabor responded that he does not make the food trays.

When Defendant Gabor was walking back past Plaintiff's cell after completing the deliveries, Gabor again ignored Plaintiff's complaint that something was missing from his food tray. Plaintiff asked why Gabor was ignoring him. Gabor approached Plaintiff's cell and yelled that he does not make the food tray, adding a racial slur. Plaintiff moved back from the cell towards his tray and acknowledged venting to himself that he wished he "could slap someone right now." (*Id*. at 8.) When Gabor asked Plaintiff what he said, Plaintiff repeated his comment, adding, "What it was to [Gabor]." (*Id*. at 8-9.) Later that day, Plaintiff was moved to segregation by Corrections Officer "Jane Doe Jordan" and Corrections Sergeant John Doe and placed in a filthy cell where he remained until October 9, 2023. Plaintiff claims he was not issued cleaning supplies.

On October 9, 2023, Plaintiff appeared before an Adjustment Committee ("Committee"), comprised of Defendants Elizabeth C. Starkey and Karly K. Yohnka. Plaintiff asserts that although he presented witnesses' statements along with his own statement, the Committee concluded that Plaintiff committed the alleged rule violation and recommended the following restrictions that were set for seven days: a transfer to segregation and commissary, audio, and visual restrictions. On November 1, 2023, Defendant Nurse allegedly retaliated by transferring Plaintiff to HCC.

**III. Analysis**

As earlier noted, Plaintiff's pleading alleges constitutional deprivations at PCC and HCC against seventeen individuals. In some instances, Plaintiff does not identify the facility where each official worked when the alleged violations occurred.

"Inmates have the right to 'humane conditions of confinement,' and 'prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates."'" *Daugherty v. Harrington*, 906 F.3d 606, 611 (7th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

The Court finds Plaintiff's account of the events that occurred at PCC is sufficient to state an Eighth Amendment conditions of confinement claim against Defendants Corrections Officer Jordan and Sergeant John Doe when placing Plaintiff in the alleged filthy cell. However, Plaintiff does not state a claim against the remaining officials he specifically identified during his time at PCC.

To make out a prima facie case of First Amendment retaliation, a plaintiff must establish that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff asserts that Defendant Nurse retaliated against him by transferring him to HCC. However, Plaintiff neither identifies his protected First Amendment activity nor provides facts that allow the inference that Nurse acted because Plaintiff exercised a protected First Amendment right. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006) ("Speculation 'based on suspicious timing alone . . . does not support a reasonable inference of retaliation.'") (quoting *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)).

Plaintiff also does not state a plausible claim against Defendant Gabor. To the extent Plaintiff believes he has the First Amendment right to openly challenge the authority of prison officials in front of other inmates, this is incorrect. *See Watkins v. Kasper*, 599 F.3d 791, 797 (7th Cir. 2010) (holding that an inmate's speech challenging a prison librarian's policies, which the inmate made in the presence of other inmates, impeded the librarian's authority and ability to implement library policy and therefore was not protected speech under the First Amendment).

Plaintiff also does not state a plausible claim against Defendant Gabor for delivering an incomplete food tray. *See Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977) ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all

that is required."); see also *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (explaining that extent, duration, and consequences are relevant in assessing whether deprivation of food violates Eighth Amendment); *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting that even two meals per day on "regular, permanent basis" may satisfy Eighth Amendment if nutritionally adequate)).

The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law." *Id.* In *Sandin v. Conner*, 515 U.S. 472, 483 (1995), the United States Supreme Court explained that state-created liberty interests, which is to say, due process protections, "will be generally limited to freedom from restraint which, ... imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483. "In the absence of such 'atypical and significant' deprivations, the procedural protections of the Due Process Clause will not be triggered." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005); *see also Miller v. Dobier*, 634 F.3d 412, 414-15 (7th Cir. 2011) ("Disciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause.").

"'Due process' in transferring an inmate to a detention that deprives the inmate of liberty consists of, at most, 'informal, nonadversary procedures' in a 'reasonable time' with 'some notice' of the prison's rationale for the transfer, an 'opportunity [for the inmate] to present his views' in writing, and periodic reviews afterwards." *Terry v. Stolworthy*, 669 F. App'x 803, 805 (7th Cir. 2016) (quoting *Westefer v. Neal*, 682 F.3d 679, 684-86 (7th Cir. 2012)); *see also Ealy v. Watson*, 109 F.4th 958, 966 (7th Cir. 2024) (quoting

*Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024) ("[I]nformal due process requires only that an inmate is provided (1) 'notice of the reasons for the inmate's placement' in segregation and (2) 'an opportunity to present his views,' for instance, in a written statement or at a hearing.") (quoting *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024)).

Plaintiff acknowledges that he appeared before the Committee on October 9, 2023, where Defendants Starkey and Yohnka considered statements offered by Plaintiff and his witnesses before finding that Plaintiff committed the alleged rule violation which Plaintiff did not disclose in his pleading. Thus, without more, which Plaintiff does not provide, Plaintiff's account fails to state a plausible claim against Defendants Starkey and Yohnka.

As for Plaintiff's account of the subsequent events that allegedly occurred after his transfer to HCC, the Court concludes that Plaintiff must file a separate complaint and pay a separate filing fee. Unrelated claims alleged against unrelated defendants raised in a single pleading violate the controlling principle in Federal Rule of Civil Procedure 18(a). Fed. R. Civ. P. 18(a) ("A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party.").

In other words, multiple claims against a single defendant are permitted, but "Claim A against defendant 1 should not be joined with unrelated Claim B against defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits, not only to prevent … morass … but also to ensure that prisoners pay the required filing fees ….").

**IT IS THEREFORE ORDERED:**

1) **According to the Court's merit review of Plaintiff's complaint [1] under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with an Eighth Amendment conditions of confinement claim against Defendant Corrections Officer Jordan and Defendant Sergeant John Doe. Plaintiff's claims against Defendants proceed in their individual capacity only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

2) **The Clerk of the Court is DIRECTED to terminate the remaining Defendants listed on the docket as parties.**

3) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendant before filing any motions to give Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.**

4) **The Court will attempt service on Defendant by mailing Defendant a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

5) **If Defendant no longer works at the address provided by Plaintiff, the entity for whom Defendant worked while at that address shall submit to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

6) **Defendant shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendant's positions. The Court does not rule on the merits of those positions unless and until Defendant files a motion. Therefore, no response to the answer is necessary or will be considered.**

7) **This District uses electronic filing, which means that after Defendant's counsel has filed an appearance, Defendant's counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendant's counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendant's counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendant's counsel has filed an appearance, and the Court has entered a scheduling order, which will explain the discovery process in more detail.**

8) **The Court grants Defendant's counsel leave to depose Plaintiff at his place of confinement. Defendant's counsel shall arrange the time for the deposition.**

9) **Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.**

10) **If Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require that Defendant pay the full costs of formal service under Federal Rule of Civil Procedure 4(d)(2).**

11) **The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

ENTERED November 3, 2026.

s/ *Colleen R. Lawless*

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE